UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61539-CIV-GOLD/DUBÉ

LINDA BARRIO,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Defendant (D.E. #14), the Motion for Summary Judgment filed by the Plaintiff (D.E. #15), and the Motion for Oral Argument filed by the Plaintiff (D.E. #19) pursuant to an Order of Reference entered by the Honorable Alan S. Gold, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Linda Barrio(hereinafter "Barrio" or "Plaintiff").

## I. FACTS

On September 25, 2006, the Plaintiff filed an application for disability insurance benefits, which asserted disability since February 9, 2006. (R.64-68).[1] The application was denied initially and on reconsideration. (R. 51-60). A hearing was held on January 8, 2008. (R. 24-33). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 13-23). A request for review filed with the Appeals Council was denied. (R. 1-3).

The Plaintiff, testified at the January 8, 2008 hearing, that she has never received worker's

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

compensation or unemployment benefits. (R. 26). Barrio added she is currently not working and had not worked since February 9, 2006 when she was employed as a facility assignment clerk at Bell South. The Plaintiff stated she worked at Bell South for thirty years and as a facility assignment clerk for ten years. (R. 27). According to the Plaintiff, her job duties were as follows:

> A lot of mental abilities to be on a computer all day long, maintaining all the records for Bell South, answering the telephones, working with engineers, outside techs, doing reports, maintaining different machines that we had that reports came over, and having to work at a certain status that, you had to have, you know, produce.

(R. 28). Barrio further stated her job was a combination of standing and sitting. She explained when standing, she would make sure the equipment/machines were operating properly, and she would do the filing.

The Plaintiff testified that the mental demands of her job were "very demanding". (R. 28). Barrio also described the reasons she stopped working as follows:

> I got, I got very ill in October of 2005 from surgery that I had, colorectal surgery. I have what they call a reservoir that's been built inside of me. Instead of, it's like and inside colostomy. And, I got very sick, was out of work for three months, and everything seemed to go wrong at that time. I started to have a lot of anxiety and depression. I was afraid that the reservoir that they had built was going to be, have to be removed. I went back to work and there was an opportunity for me to take an early retirement due to my, my health and I did. I was approved for it.

(R. 28-29). According to the Plaintiff, had she not been given early retirement, she would not have been able to return to the demands of her work. (R. 29). Barrio explained she would have missed too many days and attendance is a priority at Bell South. The Plaintiff stated she has problems controlling her bowels which require her to use the bathroom "quite a few times a day." The Plaintiff added that the problem with her bowels coupled with the stress of being watched "just got to be too much for

2

me." (R. 30).

Barrio testified that she uses the bathroom between 12-14 times per day; and in a typical month would miss 5-10 days of work. The Plaintiff also stated that she suffers from ulcerative colitis and Chron's disease. (R. 31). Barrio stated she eventually sought help from a psychologist because she suffered from depression and anxiety; and her stress level was causing her to be very anxious with feelings of worthlessness. (R. 31-32). The Plaintiff stated medications she was placed on did not work because of extreme incontinence. Barrio testified that if she was able to work, she would still be working as she wanted to work for much longer. (R. 32).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the severe impairments of: ulcerative colitis, torn right medial meniscus, bilateral carpal tunnel syndrome, depression, and anxiety disorder. (R. 18). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 20). The ALJ determined that the Plaintiff did retain the residual functional capacity to lift and/or carry up to ten pounds frequently and up to twenty pounds occasionally; is able to sit, stand, and/or walk for six hours of an eight hour workday; and is restricted to a low-stress work environment. (R. 21). The ALJ concluded at step four that the Plaintiff's RFC did not preclude her from performing her past relevant work as an assignment clerk, and thus, the Plaintiff was not disabled within the meaning of the Social

Security Act. (R. 22).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure

by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the present case, the Plaintiff raises four points of contention in her motion. Specifically, the Plaintiff contends: 1) The ALJ committed error in finding that the Plaintiff could return to her past relevant work as the RFC assessed by the ALJ precluded the requirements of the Plaintiff's past relevant work; 2) The ALJ's mental residual functional capacity was unsupported by the record; 3) The ALJ improperly discounted the opinion of the Plaintiff's treating psychiatrist and psychologist; and 4) The ALJ's physical RFC is not supported by substantial evidence.

The Court will first address the Plaintiff's contention that the ALJ improperly discounted the opinion of the Plaintiff's treating psychiatrist and psychologist.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

With regard to the opinion evidence the ALJ stated as follows:

> As for the opinion evidence, the undersigned has given relatively little weight to the opinion of Dr. Pelta that the claimant had marked limitations of her ability to follow even simple instructions. This

> opinion was inconsistent with the GAF of 65 assigned by Dr. Pelta and by his own progress notes, which indicated that the claimant's symptoms were stable and improved with the use of medication. The undersigned has likewise given relatively little weight to the opinions of Dr. Nelson-Wernick that the claimant cannot sustain full-time work or that she would likely be absent four or more times per month, due to her reaction to stress. As previously discussed, the stressful event that was causing much of the claimant's emotional instability has since resolved.
>
> ...
>
> In November and December 2006 and April 2007, non-examining doctors from the State agency assessed the claimant's physical and mental ability to perform work-related activities, in light of the medical evidence of record and the reports and recommendations of consultative examiners, and concluded that the claimant had the residual functional capacity to perform the full range of light to medium-level work, restricted to simple routine tasks in a low-stress environment (Exhibits 6F, 8F, 12F and 13F). The undersigned finds that these assessments were generally consistent with the weight of the medical evidence of record. Having viewed the evidence in the light most favorable to the claimant, the undersigned has adopted the more restrictive of the two physical assessments.

(R. 22). In the instant matter, the ALJ reviewed the medical evidence. Specifically, the ALJ discussed that in January 2006 the Plaintiff's energy was improved and she was tolerating probiotics and that the Plaintiff was only having six to eight bowel movements a day. Additionally, the ALJ discussed the Plaintiff's treatment with Dr. Eleanor Nelson-Wernick between October 2005 through November 2006 for depression and anxiety. The ALJ pointed out that progress notes indicated the Plaintiff had a stressful relationship with her husband and brother, and was worried about the general health of her elderly parents.

Additionally, the ALJ reviewed a questionnaire prepared by Dr. Nelson-Wernick. The specific questionnaire which was completed on November 29, 2006 by Dr. Nelson-Wernick stated the

Plaintiff's mood and affect were depressed and anxious. It further stated the Plaintiff often felt stressed and overwhelmed by life events. The Plaintiff's thought process was described as "intact and logical" while there was no evidence of delusions, hallucinations or an intent to commit harm to herself. The questionnaire also noted that the Plaintiff "was unable to complete serial seven's accurately after the 1st answer." Further, the Plaintiff self-reported that she had difficulty in attention and concentration when under stress and had obsessive thinking. The Plaintiff was fully oriented to time, place and person; her immediate memory was intact; recent memory was fair and less reliable when stressed; and remote memory was fair. (R. 273).

The report further found the Plaintiff to be cooperative and well groomed and stated the Plaintiff drove herself to the appointment. The Plaintiff's diagnosis was major depressive disorder and generalized anxiety disorder. The prognosis was fair. Additionally, the doctor reported the Plaintiff completes activities of daily living; plans and organizes activities in the home; manages her finances; and maintains positive long term relationships with others. The doctor concluded it would be difficult for the Plaintiff to sustain a full-time 40 hour a week job given the Plaintiff's sensitivity to stress, obsessive thoughts and being overwhelmed by her emotions. (R. 274).

The ALJ also reviewed an emergency room visit which the Plaintiff sought treatment for chest pain in January 2007. The ALJ stated that a cardiac event was ruled out and stress was the suspected cause of the chest pain. The ALJ further found that "[S]he was diagnosed with a generalized anxiety disorder with panic attack and assigned a global assessment of functioning (GAF) of 60 (Exhibit 10F)." (R. 19).

With regard to Progress Notes from psychiatrist Ely Pelta, the ALJ stated as follows:
> She complained of a great deal of depression and stress related to the

>illness of her parents and death of her mother. Nevertheless, the claimant was well groomed, with normal thought processes and speech. At the initial evaluation in December 2006, Dr. Pelta assigned a GAF of 65 (Exhibit 19F). In May 2007, Dr. Pelta completed a questionnaire, indicating that the claimant had moderate limitations of her ability to interact with others and marked limitations of her ability to follow even simple instructions (Exhibit 16F).

(R. 19).

A Medical Source Statement of Ability to do Work-Related Activities (Mental) was completed on May 15, 2007. (R. 349-351). The assessment stated that the Plaintiff had "marked" limitations in the ability to understand, remember and carry out short, simple or detailed instructions; and in the ability to make judgements or simple work-related decisions. The finding was supported by the fact the Plaintiff was forgetful, misplaced objects and had poor concentration. (R. 349).

The assessment further found that the Plaintiff had "moderate" restrictions in the ability to interact appropriately with the public, supervisors, and co-workers; and "marked" limitations in responding appropriately to work pressures in a usual work setting and to changes in a routine work setting. (R. 350). The findings were supported by the fact the Plaintiff was easily overwhelmed, anxious and had low energy. (R. 350). The assessment also stated the Plaintiff was capable of handling her own finances. (R. 351). "Marked" was defined as a "serious limitation in this area. The ability to function is severely limited, but not precluded." "Moderate" was defined as having "moderate limitations in this area, but the individual is still able to function satisfactorily." (R. 349).

The ALJ further stated the treatment records from December 2006 through November 2007 indicated the Plaintiff was under stress because of the illness of her parents; the Plaintiff was experiencing guilt from not having done enough for them. (R. 19-20). The ALJ also reviewed another questionnaire completed by Dr. Nelson-Wernick. (R. 20).

9

The Mental Impairment Questionnaire was completed November 21, 2007 and stated the Plaintiff began treatment in 1999 and was seen 1-2 times per month. (R. 410-418). The Plaintiff's GAF was 57 and her symptoms were identified as: poor memory; sleep disturbance; mood disturbance; emotional lability; perceptual disturbances; social withdrawal or isolation; recurrent panic attacks; anhedonia or pervasive loss of interests; feelings of guilt/worthlessness; difficulty thinking or concentrating; decreased energy; obsessions or compulsions; and generalized persistent anxiety. (R. 410-411). The Plaintiff was oriented times 4; had a general fund of knowledge below average as she could not name the last four Presidents or the state governor; calculations were intact; the Plaintiff could repeat a series of numbers which indicated immediate memory was intact. The Plaintiff had obsessive thoughts and had difficulty with attention when under stress. Additionally, the questionnaire stated the Plaintiff had anxiety as well as occasional panic attacks. (R. 411). The questionnaire further stated that psychotherapeutic and psychotropic intervention has assisted the Plaintiff in functioning independently and that the Plaintiff's prognosis was fair. It further found that a decrease in attention and concentration; and the ability to solves problems was mildly impaired. (R. 412).

The questionnaire further stated the Plaintiff was likely to be absent more than four times a month due to her impairments. Finally, the questionnaire found the Plaintiff had a "slight" limitation on activities of daily living; "moderate" limitation in maintaining social functioning; would "often" have deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work setting or elsewhere); and "repeated" episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of

adaptive behaviors). (R. 417-418).

As the medical evidence contained in the record suggests, the Plaintiff's depression and anxiety were related to the illnesses and deaths of her parents. As noted herein above, the record is replete with evidence which supports this finding. On March 6, 2006, the Plaintiff reported being stressed because of helping her parents. (R. 268). On June 10, 2006, the Plaintiff reported that her parent's illness is "throwing me over the edge." Again on August 4, 2006, the Plaintiff reported on going stress from her parents as well as her children. (R. 270). The Plaintiff also reported her symptoms were related to her parents on several other occasions. (R. 293, 283, 401). Additionally, while the Plaintiff was assigned lower GAF's during the course of her treatment, the ALJ did in fact address them within his opinion, but the GAF of 65 was made based on the Plaintiff's condition at the time of the evaluation. The Defendant is also correct in pointing out that the Plaintiff reported feeling good when taking medication and that the record consistently showed the Plaintiff discontinuing the use of said medications at various points during her treatment. (D.E. #14 pg. 16; R. 254, 272, 383). Further, there is very little evidence in the record related to the existence of a physical impairment.

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984). This Court does not find the ALJ's analysis to be inconsistent with the required legal standards. A review of the record shows that the ALJ took into consideration each of the Plaintiff's treating physician's testing, diagnosis and reports. (R. 18-22).

The record also reveals that there was no additional evidence which was missing from the record nor has the Plaintiff previously contended same. If at the hearing, the Plaintiff was not satisfied with the record evidence regarding her limitations, then she should have presented contrary evidence. The Plaintiff has not demonstrated the kind of gaps in evidence necessary to demonstrate prejudice. Graham v. Apfel, 129 F. 3d 1420, 1422 (11th Cir. 1997).

The ALJ further determined that while the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statement regarding her symptoms were not entirely credible.

It is well established that pain alone can be disabling. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

In the instant case, the first prong of the Lamb test was satisfied as the ALJ found the existence of an underlying medical condition. The ALJ found that the Plaintiff suffered from ulcerative colitis, torn right medial meniscus, bilateral carpal tunnel syndrome, depression, and anxiety disorder, (R. 18), all severe impairments but not severe enough to meet or medically equal, either singly or in combination to one of the listed impairments listed in Appendix 1, Subpart P, Regulation No. 4. (R. 20).

The analysis then shifts to the second prong of the test. Disabling pain could be shown in one of two methods. One, by objective medical evidence confirming the severity of the alleged pain or by showing that the underlying objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. Lamb, at 702.

Once the ALJ determined that the objective medical evidence did not confirm the severity of the Plaintiff's alleged pain he must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." Lamb, at 702, citing to, Hand v. Heckler, 761 F. 2d 1545, 1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id.

First, the ALJ reviewed the Plaintiff's testimony:

> The claimant testified at the hearing that she has as many as 14 bowel movements per day and that she often loses control of her bowels. She admitted that she took early retirement from her last job, due to anxiety and depression. She stated that she was missing so much work that returning was no longer an option. She stated that she was often absent five to 10 days per month.

(R. 21). The ALJ further stated:

> Although the medical record did support the reported number of bowel movements per day, it did not indicate that incontinence was a frequent problem. Moreover, much of the claimant's depression and anxiety appeared to have been situational and related to the concurrent hospitalization and deaths of her parents. That situation has since resolved with the death of her parents, and, after an appropriate amount of grieving, one would not expect continuing significant mental limitations.

(R. 22).

While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir. 1987). If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

In the instant matter, the ALJ articulated various reasons for finding the Plaintiff's statements were not credible. Namely, the ALJ pointed out that the allegations of significant limitations were

inconsistent with the Plaintiff's own statements regarding her activities. For example, the Plaintiff stated she can stand for five minutes at a time or one hour in an eight hour workday; walk one block; sit for two hours; lift 5 pounds; and drive for 10 to 15 minutes. (R. 255). She also stated that she walked for exercise, cared for her parents, walked her dogs, and performed household chores. (R. 255, 268, 272, 390, 392). Additionally, as the ALJ pointed out and as detailed herein above, the medical evaluations performed of the Plaintiff do not comport with the degree of limitations detailed by the Plaintiff at the administrative hearing. This Court finds that the ALJ's report met the standard set forth by the Eleventh Circuit by specifically stating his reasons for rejecting the treating psychiatrist and psychologist's opinions.

The remaining issues raised by the Plaintiff are all interrelated since they pertain to the Plaintiff's RFC, and thus, the Court will address together.

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. <u>Lewis v. Callahan</u>, 125 F. 3d 1436, 1440 (11th Cir. 1997), <u>citing</u>, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." <u>Freeman v. Barnhart</u>, 220 Fed. Appx. 957, 960 (11th Cir. 2007). Further,

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

15

SSR 96-8p (4).

A clearly articulated credibility finding with substantial supporting evidence in the record will not be disrupted by a reviewing court. Foote v. Chater, 67 F. 3d 1553, 1562 (11th Cir. 1995). After, evaluating the Plaintiff's treating physician's opinions in addition to conducting a proper credibility analysis, the ALJ then determined the Plaintiff's RFC as follows:

> ... to lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition, she is restricted to a low-stress work environment.

(R. 21). After determining the Plaintiff's RFC, the ALJ determined the Plaintiff could return to her past relevant work as an assignment clerk with the following reasoning:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. This finding is based in part on the claimant's own description of the work in her hearing testimony.

(R. 22).

According to Social Security Rulings, there are three possible tests for determining whether a claimant retains the capacity to perform his or her past relevant work. The tests are described as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc. Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. While "delivery jobs," or "packaging jobs," etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.

16

> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it. Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be "not disabled."
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description. A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61. After properly determining the Plaintiff's RFC the ALJ determined the Plaintiff could perform her past relevant work as she performed it. As the burden at step four is on the Plaintiff to show she is unable to perform same, the Court agrees with the Defendant that the Plaintiff did not meet said burden. Accordingly, as the ALJ based his decision on all the evidence of the record, it is this Court's opinion that the ALJ's opinion is supported by substantial evidence, and thus, the relief sought on this basis should be denied.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the

Motion for Summary Judgment filed by the Defendant (D.E. #14) should be **GRANTED**, the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) should be **DENIED**, and the Motion for Oral Argument filed by the Plaintiff (D.E. #19) should be **DENIED as MOOT**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Alan S. Gold, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 3 day of April, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE